**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES MICHAEL COHEN,

                    Plaintiff,

v.                                                        Case No. 3:15-cv-133-J-34JRK

JEFFREY McGUIRE, CHARLES WILLIAMS,
& THE CITY OF JASPER, FLORIDA,

                    Defendants.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment (A Dispositive Motion) and Supporting Memorandum of Law (Doc. 33; "Motion"), filed on September 14, 2015. On September 28, 2015, Plaintiff, James Michael Cohen, filed Plaintiff's Response to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (Doc. 39; "Response"). With leave of Court, Defendants, Jeffrey McGuire, Charles Williams, and the City of Jasper, Fla., filed Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 52; "Reply") on October 23, 2015. On November 3, 2015, also with leave of Court, Cohen filed Plaintiff's Corrected[1] Surreply to §1 of Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (Doc. 60; "Surreply"). Accordingly, this matter is ripe for review.

---

[1] Cohen states that he filed the corrected Surreply solely to correct the Certificate of Service. See Surreply at 1.

## I.    Background Facts[2]

From 1998 or 1999 until 2011, Cohen was employed as a deputy sheriff with the Hamilton County Sheriff's Office ("HCSO"). Doc. 32-1 (deposition of James Michael Cohen; "Cohen Depo.") at 22. While employed there, Cohen began working as an unpaid volunteer for the Special Olympics. Id. at 39. He would often perform his volunteer work while on duty for the HCSO. Id. at 45. During those times, he would be paid by the HCSO. Id. Cohen also officiated youth athletic events for Hamilton County and provided security for community functions such as school dances. Id. at 30, 50. He was paid separately for some of those activities. Id. at 32.

At some point in late 2010, McGuire, the chief of police at the Jasper Police Department ("JPD"), approached Cohen to offer him the position of captain in the JPD. Id. at 25–26, 30. According to Cohen, during his initial conversation with McGuire about the captain position, Cohen informed McGuire of his involvement with the Special Olympics, officiating youth athletic events, and providing security, and McGuire agreed that Cohen could continue those activities as part of "community policing." Id. at 27, 29, 31–32, 47–48. Cohen also informed McGuire that he made "a little extra money" performing some of those activities. Id. at 32. After receiving McGuire's offer, Cohen spoke with the Sheriff of Hamilton County about leaving the HCSO to accept employment with the JPD. Id. at 27–28. Cohen then returned to McGuire to confirm that the offer existed. Id. at 28–29. The subject of Cohen's outside activities arose again when McGuire informed Cohen that he would be working from 6:00 p.m. to 2:00 a.m. with Sundays and

---

[2] For the purposes of resolving Defendants' Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Cohen. The Court notes that these facts may differ from those ultimately proved at trial. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

Mondays off. Id. at 33. In that conversation, Cohen mentioned again that he had "gigs … on the side where [he] made extra change, and some of those times would conflict." Id. at 34, 70. McGuire responded, "Look, I'm hiring you. All right? Don't worry about it. I'll take care of that. Don't even worry about it. I'll take care of it." Id. Because Cohen understood that he had permission to continue his outside activities even if they conflicted with his work schedule, Cohen did not bring the issue up again. Id. at 70–71. Ultimately, Cohen accepted the position of captain and started working for the JPD in January 2011. Id. at 29, 87.

At the time Cohen was hired, the City's Personnel Policy permitted City employees to take on other employment or private business "during the hours for which the City is compensating them" as long as the officer obtained prior approval. Doc. 32-5 (deposition of Charles Williams, part 1; "Williams Depo. Pt. 1") at 29–30; Doc. 32-6 (deposition of Williams, part 2; "Williams Depo. Pt. 2") at 30–31. It required law enforcement officers to obtain "the express written consent of the Chief of Police" to engage in outside employment. Id. at 31. In October 2012, the City amended its Personnel Policy manual. Williams Depo. Pt. 1 at 97. As relevant here, the new policy prohibited outside employment during an employee's regular or assigned working hours. Williams Depo. Pt. 1 at 113–14. The policy required law enforcement officers to obtain the written consent of both the chief of police and the city manager to engage in any outside employment. Id. at 114. The policy was not retroactive. Id. at 28. At no time did Cohen obtain written permission from either McGuire or Williams to officiate or coach youth athletic events for pay during his regular working hours. Cohen Depo. at 85–86.

About five or six months after McGuire hired Cohen, Michael Vickers, another JPD officer, "got wind that Captain Cohen was working full time with the police department and was also" involved with youth athletic events. Doc. 40-1 (deposition of Michael Vickers; "Vickers Depo.") at 6. Upon learning that information, Vickers "went straight to Chief McGuire and asked him how could one officer, you know, work two different jobs being at the same time." Id. at 6–7. McGuire confirmed that Vickers was referring to Cohen and informed Vickers that "'[t]hat's captain's privileges.'" Id. at 7. McGuire also indicated that Cohen's activities were a matter between him and Cohen and that Vickers should "stay out of it." Id. at 8. According to Vickers, McGuire said the JPD's policies and procedures were "like a light switch, they could be switched on or they could be switched off at [McGuire's] discretion." Id.

During his employment with the JPD, Cohen submitted weekly time sheets reflecting the hours he worked in a given week. Id. at 90–91, 280. Cohen would sign the time sheets under a statement certifying "that this is a true and accurate record of all time worked and leave taken during [the] pay period." Id. In completing the time sheets, Cohen recorded that he worked his entire shift on each time sheet, even for days during which he spent part of his shift officiating and so was not at his assigned post. Id. at 91. Cohen testified that he had never worked in a salaried position before and did not understand how the time sheets worked, and he was under the impression that the hours he recorded did not matter because he would receive the same pay regardless of how many hours he had worked. Id. at 92. When Cohen approached McGuire to express his confusion about the time sheets, McGuire told him that he had permission to perform the outside activities during his shift, that "[h]e [McGuire] had it covered," and that he (Cohen) did not need to

worry about it. Id. To offset the amount of time he spent performing other activities during his shift, Cohen would not use most of his vacation time, which he forfeited at the end of each year. Id. at 93–94. McGuire told Cohen that such a course of action was acceptable. Id. at 94.

On December 21, 2012, McGuire left a memorandum in Cohen's office inbox indicating that they needed to have a meeting to "discuss the direction of the department and ensure that all of us are on the same page." Id. at 97–98, 281. The memorandum also challenged Cohen to become a more assertive leader. Id. at 281. Specifically, it stated:

> Additionally, it is difficult to lead if you are not here. Often, I hear [griping] from the officers that you are coaching and not at work. I believe you need to decide which is more important[,] leading this agency or coaching.

Id. Cohen did not hear about any of the issues raised in the memorandum again, and McGuire never scheduled a meeting. Id. at 101–02. At no other time did McGuire suggest that Cohen would need to decide between coaching and serving as captain, and McGuire never revoked Cohen's permission to engage in outside activities. Id. at 102, 105–06.

On November 14, 2013, while Cohen was patrolling in uniform, McGuire called Cohen and told him to come to the police department. Id. at 107, 110. Upon Cohen's arrival at about 9:30 p.m., McGuire directed Cohen to turn in his gun, keys, and badge and told him to return to the office at 10:00 a.m. the next morning. Id. at 108. McGuire did not tell Cohen why he was being ordered to surrender his equipment or return in the morning. Id. at 108–09. Cohen returned the next morning as directed and met with McGuire in Cohen's office. Id. at 111. McGuire told Cohen that Cohen "had been stealing from the City or double dipping" and gave him the option of either resigning or being fired

and having charges pressed against him. Id. at 113. When Cohen expressed surprise and questioned the decision, McGuire responded that Williams (who was the City Manager) and the mayor had agreed to be the victim for any criminal charges. Id. McGuire then told Cohen, "[I]f you don't resign, I'm going to get up and I'm going to walk out of here and I'm going to the state attorney's office and request a warrant be issued for these charges." Id. at 114. Cohen asked if he could have some time to think about his choice, but McGuire responded, "No. This has to happen today." Id. Cohen continued to question the accusations, stating, "You knew what I was doing. You told me I could do it." Id. at 115. McGuire never directly acknowledged Cohen's claim that he had permission to perform the activities but instead said, "Look, this is bigger than me. This is over my head. … The city manager wants you gone. … Now, if you're not going to do this, then I'm off to the state attorney's office and I've been instructed to make this stick." Id. at 115–16, 125.

At some point during the conversation, McGuire presented Cohen with a memorandum officially notifying Cohen that he had been relieved of duty as of the meeting on the evening of November 14. Id. at 116, 282. Cohen signed the memorandum. Id. at 107, 123. After presenting Cohen with his options, McGuire went to his own office for 10 to 15 minutes and typed Cohen's resignation letter. Id. at 121–22, 283. He returned with the letter and had Cohen sign it. Id. Cohen stated that he did not feel good about the situation and told McGuire that he needed to seek legal advice, but McGuire responded that it was too late because he had already signed the letter. Id.

Cohen called McGuire on November 18, 2013, stating that he wanted to rescind his resignation and on November 20 submitted a letter to the same effect. Id. at 141, 157,

285. The next day, McGuire responded by letter denying Cohen's request to rescind his resignation because it had "already been accepted and relied upon." Id. at 159, 286. Cohen attempted to appeal his resignation to the City Council on November 27, 2013, but the City Council denied the appeal because, according to McGuire and Williams, Cohen had voluntarily resigned. Id. at 287–89; Doc. 40-5 at 2.

After Cohen's resignation, McGuire conducted an investigation into Cohen's involvement with youth athletic events while on duty as a police officer. Doc. 32-2 (part one of deposition of McGuire; "McGuire Depo. Pt. 1") at 237–38. McGuire presented the findings of his investigation to the State Attorney Jeff Siegmeister, who then asked McGuire to complete a criminal complaint and affidavit. Id. at 282. After McGuire submitted his investigation packet to the State Attorney's Office, an investigator with that office obtained Cohen's time sheets from the JPD and payment vouchers from Hamilton County related to Cohen's officiating activities. Id. at 52.

McGuire completed and submitted a Complaint/Arrest Affidavit ("the Complaint and Affidavit") to the State Attorney's Office on November 22, 2013. Cohen Depo. at 291. In it, he averred that there was probable cause to arrest and charge Cohen for 10 counts of unlawful receipt of compensation or reward for official behavior, under Florida Statutes section 838.016, and 10 counts of official misconduct, under Florida Statutes section 838.022. Id. As the factual basis for those charges, McGuire "certifie[d] and [swore] that he … ha[d] just and reasonable grounds to believe, and d[id] believe," that:

> The above defendant[,] between the time period of Sept. 12, 2013[,] and Nov. 15, 2013[,] on (10) different [occasions][,] did unlawfully receive compensation for official behavior, by means of submitting a signed payroll sheet (Public Record) to the City of Jasper and receiving monetary compensation. (Cohen) also submitted/received payment from Hamilton County Government on the same dates/times as the City of Jasper.

Id. Based on McGuire's Complaint and Affidavit, the records of Cohen's time sheets from the City and payment vouchers from the County, and conversations with McGuire during which McGuire indicated that he had previously told Cohen to stop officiating, Assistant State Attorney Craig Jacobsen filed an information on November 26, 2013, charging Cohen with grand theft and cheating. Doc. 40-6 (deposition of Craig Jacobsen; "Jacobsen Depo.") at 14, 66–67. After McGuire asked Jacobsen why he had not also charged Cohen with official misconduct, Jacobsen agreed that he had clearly erred in excluding that charge and filed an amended information on December 2, 2013, adding it. Id. at 16–17, 68–69. At the time he filed the charges, Jacobsen was unaware of (1) Vickers's testimony that McGuire had told him that Cohen's involvement with youth athletics while on the clock for the City was "captain's privileges" or (2) McGuire's recorded statement during a City Council meeting acknowledging that Cohen was involved with youth athletics for the County while on City payroll and that those activities were part of community policing. See id. at 21–22; see also Doc. 32-3 (part two of McGuire's deposition; "McGuire Depo. Pt. 2") at 47 (transcript of audio recording from October 2011 City Council meeting). Later that month, after receiving a call from a sergeant who worked at the jail informing him that there was a warrant out for his arrest, Cohen turned himself in to law enforcement. Cohen Depo. at 171–75. He was then arrested, booked, and released on his own recognizance. Id. at 174–75.

In early 2014, Jacobsen transferred responsibilities for the case to Assistant State Attorney John Durrett. See Jacobsen Depo. at 20–21; Doc. 40-7 (part one of deposition of John Durrett; "Durrett Depo. Pt. 1") at 8. After taking depositions of Vickers and a member of City Council, and considering the recording of the City Council meeting,

Durrett decided to enter a Notice of Nolle Prosequi on May 13, 2014, declining to prosecute the charges against Cohen. See Durrett Depo. Pt. 1 at 10–16; Doc. 40-8 (part two of deposition of Durrett; "Durrett Depo. Pt. 2") at 30. That notice stated, "Although probable cause initially existed for the above listed charges, the discovery process has revealed that these charges cannot be proven beyond and to the exclusion of a reasonable doubt." Durrett Depo. Pt. 2 at 30.

## II.    Procedural History

Cohen filed his complaint against McGuire, Williams, and the City on January 15, 2015. See Doc. 2 at 1. On February 4, 2015, Defendants removed the case to this Court. Doc. 1. Cohen filed his Second Amended Complaint on April 22, 2015. Doc. 13 ("Second Amended Complaint"). In his Second Amended Complaint, Cohen asserts 11 claims. In Count I, Cohen brings a claim under Florida law against the City alleging false arrest. Id. ¶¶ 34–40. In Count II, he brings the same claim in the alternative against McGuire and Williams. Id. ¶¶ 41–44. In Count III, relying on state law, Cohen alleges a conspiracy between McGuire and Williams to falsely arrest Cohen. Id. ¶¶ 45–47. In Count IV, Cohen asserts a claim under Florida law against McGuire and Williams for malicious prosecution. Id. ¶¶ 48–53. In Count V, again relying on state law, Cohen alleges a conspiracy between McGuire and Williams to maliciously prosecute him. Id. ¶¶ 54–57. In Count VI, Cohen asserts a claim under 42 U.S.C. § 1983 against the City alleging it is liable as a municipality for false arrest. Id. ¶¶ 58–65. In Count VII, he brings a claim under § 1983 against McGuire and Williams for false arrest and conspiracy to falsely arrest. Id. ¶¶ 66–70. In Count VIII, Cohen asserts a claim under § 1983 against McGuire and Williams alleging that they violated the Fourteenth Amendment by depriving him of a protected

property interest in his continued employment with the City without due process. Id. ¶¶ 71–91. In Count IX, he asserts that the City is liable as a municipality for that due-process violation under § 1983. Id. ¶¶ 92–96. In Count X, Cohen brings a claim under § 1983 against McGuire and Williams alleging that they deprived him of a protected liberty interest without due process when they publicized false and stigmatizing information about him in connection with his discharge from employment. Id. ¶¶ 97–107. Finally, in Count XI, Cohen asserts that the City is liable as a municipality for that due-process violation under § 1983. Id. ¶¶ 108–13. Defendants filed Defendants' Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint on May 1, 2015. Doc. 14 ("Answer").

### III.    Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[3] An issue is genuine when the evidence is such that a

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Where the nonmoving party has failed to make a sufficient showing 'to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' there exist no genuine issues of material fact."

Mize, 93 F.3d at 742 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

## IV.   Discussion

### A.   False Arrest and Malicious Prosecution under Florida Law (Counts I, II, and IV)

Cohen brings claims under Florida law against McGuire, Williams, and the City for false arrest[4] and a claim against McGuire and Williams (but not the City) for malicious prosecution. Second Amended Complaint ¶¶ 34–44, 48–53. Under Florida law, "[f]alse arrest is defined as the unlawful restraint of a person against that person's will," but "probable cause is an affirmative defense" to that intentional tort. Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. 5th DCA 2006). Malicious prosecution requires proof of:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff.

Jackson v. Navarro, 665 So. 2d 340, 341–42 (Fla. 4th DCA 1995) (internal quotation omitted). As to both the false arrest and malicious prosecution claims, Defendants argue they are entitled to summary judgment in their favor because probable cause existed to arrest and prosecute Cohen, and there is no evidence that McGuire or Williams caused Cohen's prosecution or that Williams had any involvement in Cohen's arrest. Motion at 10–14, 24–25.

---

[4] Under Florida law, false arrest and false imprisonment are two terms for the same tort. See Jackson v. Navarro, 665 So. 2d 340, 340 (Fla. 4th DCA 1995) (stating that plaintiff sued sheriff "for false arrest, a/k/a false imprisonment"); Gatto v. Publix Supermarket, Inc., 387 So. 2d 377, 379 n.1 (Fla. 3d DCA 1980) ("We treat the false arrest and false imprisonment [claims] as one, since the difference is one of terminology only."). As such, to the extent the Court discusses "false imprisonment," it is referencing Cohen's claims in Counts I through III relating to "false arrest."

### 1.   Probable Cause

Under both federal and Florida law,

> [f]or probable cause to exist, … an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citation omitted). "Whether an officer possesses probable cause … depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, Ala., 608 F.3d 724, 735 (11th Cir. 2010) (citations omitted). "[I]t is not necessary that an officer prove every element of [a] crime before making an arrest." Rhodes v. Kollar, 503 F. App'x 916, 924 (citing Harrell v. United States, 875 F.2d 828, 830 (11th Cir. 1989); United States v. Everett, 719 F.2d 1119, 1120 (11th Cir. 1983) (concluding that officers had probable cause to arrest criminal defendants even absent evidence of intent)).

Defendants argue that probable cause existed to arrest and prosecute Cohen for official misconduct and grand theft.[5] As relevant here, a person commits official misconduct when, "with corrupt intent to obtain a benefit for any person or to cause harm to another," he or she "[f]alsif[ies], or cause[s] another person to falsify, any official record

---

[5] Cohen was also charged with "cheating." See Jacobsen Depo. at 66, 68. Under Florida law, "[w]hoever is convicted of any gross fraud or cheat at common law shall be guilty of a felony of the third degree." Fla. Stat. § 817.29. Defendants observe that Florida courts have defined that offense as "knowingly and designedly, by false pretense, obtaining from any person or persons, money, goods, wares[,] or merchandise with the intent to cheat or defraud said person or persons of same." Motion at 11 (citing State v. Vikhlyantsev, 622 So. 2d 1365, 1367 (Fla. 2d DCA 1993). Although Defendants discuss the elements of that offense, they provide no separate argument that probable cause existed as to that specific charge. Nevertheless, because the offense requires proof of Cohen's specific intent—his "intent to cheat or defraud"—for the reasons discussed infra at 15–17 as to the official misconduct and grand theft charges, the Court cannot conclude as a matter of law that probable cause existed to arrest and prosecute Cohen for cheating.

or official document." Fla. Stat. § 838.022(1)(a). "A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently … [d]eprive the other person of a right to the property or a benefit from the property." Fla. Stat. § 812.014(1)(a). The parties agree that both offenses require evidence of the criminal defendant's specific intent. See Motion at 12; Response at 11.

Defendants argue that probable cause existed to arrest and prosecute Cohen because (1) an arresting officer need not have proof of every element of a crime to have probable cause; (2) one person cannot give another the authority to commit a crime, so even if Cohen did have McGuire's permission, that fact is irrelevant; (3) any verbal permission Cohen had to officiate or coach youth athletic events for separate compensation while on the clock for the City was "expressly revoked" by the October 2012 amendment to the City's Personnel Manual, which required the written approval of both McGuire and Williams to take on outside employment; and (4) Cohen had the specific intent necessary for grand theft and official misconduct because he knowingly accepted payment from both the City and the County for the same hours worked. Motion at 10–13. Cohen responds that McGuire knew Cohen had permission to engage in the conduct underlying the charges, and in light of that permission, he was not "double dipping." Response at 11–12. He also responds that the October 2012 policy amendment was not retroactive, and the existence of permission—regardless of whether written or oral—would negate any criminal intent. Id. at 12. In their Reply, Defendants reiterate their position that the 2012 amendment to the Personnel Manual superseded the prior policy on outside employment and applied to all of Cohen's conduct after the amendment took

-14-

effect. Reply at 1–3. In his Surreply, Cohen repeats his earlier response that Williams's testimony established that the policy amendment did not apply to Cohen's conduct or revoke the permission he had, and in any event it is irrelevant whether Cohen had written or verbal permission because any permission he received negated the intent required under all of the charged offenses. Surreply at 1–3.

The Court recognizes that an officer need not prove every element of an offense to establish probable cause. Nevertheless, "[a] lack of evidence on a particular element … is quite a different matter from the presence of evidence that affirmatively suggests that an element cannot be met." Navarro v. City of South Gate, 81 F. App'x 192, 195 & n.3 (9th Cir. 2003); see also Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir. 1999) ("[The officer] ignored plainly exculpatory evidence that negated the intent required for simple assault."). Here, a genuine dispute exists as to whether McGuire knew of evidence establishing that Cohen lacked the specific intent necessary to convict him of the charged offenses. Cohen points to evidence that, before accepting employment with the JPD, he told McGuire about his outside activities officiating youth athletics—including his payment for those activities—and that McGuire agreed he could continue with those activities even if they conflicted with his work schedule. Cohen Depo. at 27, 29, 31–34, 47–48, 70–71. Cohen testified that McGuire never revoked that permission. Id. at 102, 105–06. He points to evidence that McGuire told Vickers that officiating youth athletic events while on the clock as a police officer was "captain's privileges." Vickers Depo. at 6–8. He also points to evidence that McGuire acknowledged during a City Council meeting in October 2011 that Cohen engaged in such activities while on the clock and that those activities were consistent with community policing. McGuire Depo. Pt. 2 at 47. And finally, Cohen points

to evidence that he expressed concerns about his time sheets to McGuire but that McGuire told him not to worry about it because he (McGuire) "had it covered." Cohen Depo. at 92. Because there is evidence that McGuire knew but did not disclose in his Complaint and Affidavit that he had given Cohen permission to engage in the activities on which the charges against Cohen were based, and because the existence of such permission could foreclose the possibility that Cohen had the necessary "corrupt intent" (for official misconduct) or "intent to deprive" the City of its right to property (for grand theft), the Court cannot determine as a matter of law that probable cause existed to arrest and prosecute Cohen for those crimes.

Defendants' other arguments are similarly unavailing. To the extent they argue that one person cannot give another the authority to commit a crime, they misunderstand the relevance of the evidence of McGuire's permission. As discussed, evidence that McGuire gave Cohen permission to work at youth athletic events for additional pay while on the clock as a police officer and told Cohen not to worry about his time sheets is relevant because, with such permission, a reasonable jury could conclude that Cohen did not have the specific intent necessary to commit the charged crimes. Indeed, the City's own policy at the time Cohen was hired permitted employees to engage in employment "during the hours for which the City is compensating them" as long as they had proper approval. See Williams Depo. Pt. 1 at 30; Williams Depo. Pt. 2 at 30. Defendants' assertion that the 2012 amendment to the Personnel Manual revoked any prior permission Cohen had is similarly insufficient. Even assuming the amendment had that effect,[6] a reasonable jury

---

[6] There is at least a genuine dispute as to the effect of the amendment to the Personnel Manual. Cohen points to Williams's testimony that the amendment was prospective to show that it did not apply to him. Response at 12; Surreply at 1–3. Defendants argue that Williams's testimony indicates only that the amendment could not be used to discipline an employee for conduct that occurred before it became

could still conclude, based on Cohen's testimony, that McGuire knew Cohen lacked the

specific intent required for the charged offenses. As such, Defendants are not entitled to

summary judgment in their favor as to Cohen's claims for false arrest and malicious

prosecution in Counts I, II, and IV on the basis that probable cause existed to arrest and

prosecute Cohen.[7]

---

effective. Reply at 1–2. It is unclear whether Williams's testimony that the amendment was prospective means (1) that it applied only to employees seeking permission to engage in outside employment for the first time after the amendment went into effect (in which case it would not apply to Cohen, who initially received permission before the amendment and was not thereafter required to seek permission); or (2) that it applied to all employees engaging in outside employment and required employees who previously had permission to renew their permission in writing (in which case it would apply to Cohen). Because Williams's testimony is unclear on that point, it would be for the jury to determine its meaning.

[7] The Court observes that, under Florida law, the torts of false arrest and malicious prosecution are mutually exclusive. See Jackson, 665 So. 2d at 342; Erp v. Carroll, 438 So. 2d 31, 40 (Fla. 5th DCA 1983) ("[B]ecause damages for resulting confinement are recoverable in a malicious prosecution action in which the existence of legal authority is implied, while the finding of a false imprisonment based on an arrest implies a lack of legal authority or lawful process, the recovery on one cause of action is generally held to bar recovery on the other when both relate to the same factual event."). The Florida Supreme Court has long recognized that "the distinction between malicious prosecution and false imprisonment is fundamental." S.H. Kress & Co. v. Powell, 180 So. 757, 762 (Fla. 1938).

> [T]he essential difference between a wrongful detention for which malicious prosecution will lie, and one for which false imprisonment will lie, is that in the former the detention is malicious but under the due forms of law, whereas in the latter the detention is without color of legal authority. In malicious prosecution plaintiff must allege and prove malice and want of probable cause and the termination of the proceeding favorably to plaintiff, whereas in false imprisonment the allegation of want of probable cause is not essential, and the burden is on defendant to prove probable cause as a defense or in mitigation. Malice is material only on the issue of damages, and the termination of the proceeding is not material. If the imprisonment is under legal authority it may be malicious but it cannot be false. This is true where legal authority is shown by valid process, even if irregular or voidable. Void process will not constitute legal authority.

Id. (quotations omitted). Florida courts have since refined the distinction as follows: "[Malicious prosecution] arises out of the wrongful commencement of a judicial proceeding, while [false imprisonment] occurs when there is an improper restraint which is not the result of a judicial proceeding." Jackson, 665 So. 2d at 342. Where a plaintiff alleges that he was arrested or imprisoned as a result of malicious proceedings against him, damages arising from such arrest are "part of the damages resulting from malicious prosecution because in such a case, while the prosecution may have been commenced and carried out maliciously, the imprisonment is under process regular and in legal form issued by lawful authority and the resulting imprisonment is not false." Id.

Here, the parties have not indicated whether Cohen's arrest resulted from judicial proceedings. See generally Motion; Response. The evidence tends to suggest that Cohen was arrested after he learned of a warrant for his arrest, see Cohen Depo. at 171–75, and after Jacobsen filed the amended information, see Jacobsen Depo. at 68–69. Nevertheless, because neither party raises the issue, the Court declines to decide at this stage of the proceedings which claim Cohen may pursue. It is for the jury to determine whether

### 2.   Legal Cause of False Arrest and Malicious Prosecution

Defendants next contend that Cohen fails to present evidence that McGuire or Williams were the legal cause of Cohen's prosecution and that there is no evidence that Williams was involved at all in Cohen's arrest. Motion at 13–14, 24–25. Cohen responds that there is evidence that both McGuire and Williams caused his arrest and prosecution, and the chain of causation is unbroken by the prosecutor's actions because the prosecutor relied solely on information from McGuire. Response at 13–14.

As to McGuire, Defendants cite the general rule that law enforcement officers cannot be the legal cause of a prosecution because the prosecutor's intervening decision to bring charges "breaks the chain of causation" between the officer's actions and the prosecution. See id. at 14 (citing Williams v. Miami-Dade Police Dept., 297 F. App'x 941 (11th Cir. 2008), and Barts v. Joyner, 865 F.2d 1187 (11th Cir. 1989)). The cases Defendants cite also explain that the general rule does not apply where the "intervening acts were the result of deception or undue pressure by the defendant policemen." Williams, 297 F. App'x at 947 (quoting Barts, 865 F.2d at 1195).

Defendants argue that the record is devoid of evidence that McGuire pressured the State Attorney's Office to prosecute; that the State Attorney's Office conducted its own investigation after receiving McGuire's information; and that McGuire did not believe the State Attorney's Office would prosecute. See Motion at 14. As to the first argument, Cohen has presented evidence that McGuire at least urged the State Attorney's Office to file an amended information adding an additional charge, which a jury could find supports

---

the evidence indicates that Cohen was arrested as a result of judicial proceedings against him. The jury's finding will dictate which tort he may pursue.

a conclusion that he sought to influence the prosecutor to pursue the case. See Jacobsen Depo. at 16–17. In any event, based on Cohen's version of events, which the Court must accept at this stage of the proceedings, a jury could conclude that McGuire intentionally omitted any mention of Cohen's prior permission from his Complaint and Affidavit, "which resulted in the prosecutor being presented with … misleading evidence." See Williams, 297 F. App'x at 947. Such a finding would permit a jury to conclude that Cohen satisfied the legal causation element of malicious prosecution. See id. Defendants' contention that the State Attorney's Office conducted its own investigation ignores the evidence that Jacobsen relied on McGuire's Complaint and Affidavit, and that the only evidence that McGuire did not directly supply to Jacobsen consisted of the time sheets and pay records he obtained to verify McGuire's allegations. See Jacobsen Depo. at 14. Significantly, Jacobsen testified that, had he known that McGuire had given Cohen permission to engage in outside employment, he would not have brought any charges because he "wouldn't have thought that Captain Cohen would have thought he was doing anything wrong if he had permission from his boss to do this." Jacobsen Depo. at 21–22, 31–32. Defendants' final contention—that McGuire did not believe charges would be brought— is irrelevant. As such, McGuire is not entitled to summary judgment in his favor as to Counts II and IV.

As to Williams, Defendants argue that there is simply no evidence of his involvement in either Cohen's arrest or his prosecution. See Motion at 14, 24–25. In response, Cohen points to his own testimony that (1) McGuire told him that Williams agreed to allow the City to be the victim in the criminal complaint, see Cohen Depo. at 113; (2) McGuire told him that the decision to threaten him with termination and criminal

charges was "over [McGuire's] head," id. at 115; and (3) McGuire told him that Williams wanted him gone, id. See Response at 14, 23–24. Cohen asserts that that testimony, combined with Williams's knowledge of McGuire's statements during the October 2011 City Council meeting, establishes that Williams knew Cohen had done nothing criminal but urged prosecution anyway. Id. However, all of that testimony relates to the decision to offer Cohen a choice between resigning and being terminated with a criminal prosecution to follow. Thus, that evidence, if accepted, would tend to demonstrate that Williams was the driving force behind the efforts to force Cohen out of his position; in other words, that Williams caused McGuire to threaten prosecution. But Cohen points to no evidence that after he opted to resign rather than face those charges, Williams urged McGuire to file the criminal complaint. As such, Cohen has failed to present sufficient evidence to create a genuine issue as to whether Williams had any involvement in the decision to pursue the prosecution or have Cohen arrested. Indeed, despite being asked specifically whether Williams ever actually gave McGuire permission to go to the State Attorney, Cohen provided no such evidence. See Cohen Depo. at 181.[8]

---

[8] Cohen testified as follows:

Q      Did Chief McGuire advise you that he had the city manager's permission to present the complaint to the state attorney?

A      Said he was aware of it. It was above his head. He said the city manager wanted me gone.

Q      Did he ever specifically mention anything about getting the city manager's permission to go forward to the state attorney?

A      No more than what I just told you.

Cohen Depo. at 181. Cohen cites that testimony as evidence that "McGuire had Williams'[s] permission to present his complaint … to the State Attorney's Office." Response at 23. But the testimony indicates no more than what Cohen had testified to earlier, which is that McGuire had told him that Williams had given McGuire permission to bring criminal charges if Cohen did not resign. It says nothing about whether Williams gave McGuire permission to pursue criminal charges even if Cohen resigned.

Moreover, Cohen points to no evidence that Williams had any knowledge of the contents of the Complaint and Affidavit. And, it was McGuire's statements in the Complaint and Affidavit that were incomplete and McGuire's decision to submit it that led to the prosecution. Moreover, Cohen testified that he learned of Williams's agreement to allow the City to be the victim during his November 15, 2013, meeting with McGuire, before his decision to resign. See Cohen Depo. at 113, 180–81. Thus, the chain of causation from Williams's action (allowing the City to be the victim in connection with criminal charges if Cohen did not resign) to Cohen's prosecution is not unbroken.[9] Because Cohen has failed to identify evidence creating a genuine dispute as to whether Williams was the legal cause of Cohen's prosecution, there is also insufficient evidence to create a genuine dispute as to Williams's involvement in Cohen's arrest, which apparently resulted from that prosecution. As such, Williams is entitled to summary judgment in his favor as to Counts II and IV.

## B.    Conspiracy to Falsely Arrest and Maliciously Prosecute under Florida Law (Counts III and V)

Cohen brings claims alleging that McGuire and Williams conspired to maliciously prosecute and falsely arrest him. Second Amended Complaint ¶¶ 45–47, 54–57. Defendants argue that, because there was probable cause to arrest and prosecute Cohen, his conspiracy claims necessarily fail because the underlying torts fail. Motion at

---

[9] The only evidence Cohen cites relating to Williams's knowledge is the recording of the October 2011 City Council meeting. See Response at 14, 23. Although the exchange between McGuire and the City Council member would support a conclusion that Williams knew Cohen had permission to officiate while on the clock for the City, it would not support an inference that Williams knew Cohen was being paid separately for that outside activity. See McGuire Depo. Pt. 2 at 47. As such, there is no evidence that Williams knew the factual basis for McGuire's Complaint and Affidavit—that Cohen was being paid by two separate entities for the same time, see Cohen Depo. at 291—was false. Under those circumstances, Williams's acquiescence to a criminal investigation by law enforcement is insufficient to find him to be the legal cause of Cohen's arrest and prosecution. See Pokorny v. First Fed. Sav. & Loan Ass'n of Largo, 382 So. 2d 678, 682 (Fla. 1980).

15. They also contend that Cohen has not presented any evidence actually showing a conspiracy between McGuire and Williams. Id. In response, Cohen refers to his previous argument that probable cause was lacking and argues that the evidence of McGuire's statements to Cohen that the decision to force him out was "over [McGuire's] head" and that Williams "want[ed] [him] gone" is sufficient to demonstrate a conspiracy. Response at 14–15.

"The elements of a civil conspiracy are: [(1)] a conspiracy between two or more parties, [(2)] to do an unlawful act or a lawful act by unlawful means, [(3)] the doing of some overt act in pursuance of the conspiracy, and [(4)] damage to plaintiff as a result of the act performed pursuant to the conspiracy." Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). Although the Court previously concluded that there was a genuine dispute as to whether probable cause existed to arrest and prosecute Cohen, the Court also concluded that Cohen failed to identify sufficient evidence to create a genuine dispute as to whether Williams was involved in the actual arrest and prosecution. Absent evidence of Williams's involvement in the decision to prosecute and arrest Cohen—as opposed to the decision to threaten charges or remove him from his position—there is no evidence of any agreement between the two to actually have Cohen falsely arrested or maliciously prosecuted. Thus, McGuire and Williams are entitled to summary judgment in their favor as to Counts III and V.

### C.   § 1983 – False Arrest (Counts VI and VII)

Cohen brings claims under 42 U.S.C. § 1983 for false arrest against McGuire, Williams, and the City. Second Amended Complaint ¶¶ 58–70. Defendants argue they are entitled to summary judgment in their favor as to those claims because McGuire and

Williams are entitled to qualified immunity, and Cohen has failed to identify sufficient evidence that McGuire and Williams had final policy making authority for the City in this context such that the City would be liable for their actions.[10] Motion at 21–23, 25–26.

### 1.   Qualified Immunity

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As a result, the qualified immunity defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'" Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003). Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

In order to be entitled to qualified immunity, an official must first establish that his conduct was within the scope of his discretionary authority. See Webster v. Beary, 228 F. App'x 844, 848 (11th Cir. 2007) (per curiam); Lee, 284 F.3d at 1194. Here, the parties do not dispute that McGuire was acting within his discretionary authority at the time he filed the Complaint and Affidavit. Accordingly, the burden shifts to Cohen to demonstrate that qualified immunity is not appropriate using the two-prong test established by the Supreme

---

[10] Defendants also argue they are entitled to summary judgment as to these claims because probable cause existed to arrest Cohen. See Motion at 10. However, as previously discussed, there is a genuine dispute as to whether probable cause existed. See supra at 15–17.

Court in Saucier v. Katz, 533 U.S. 194, 201 (2001). The first inquiry is, taken in the light most favorable to the non-moving party, "do the facts alleged show the officer's conduct violated a constitutional right?" Id.; see also Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting Scott v. Harris, 550 U.S. 372, 377 (2007)). If the court finds that a violation of a constitutional right has been alleged based on the plaintiff's version of the facts, the next question is whether the right was clearly established at the time of the violation.[11] Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Lee, 284 F.3d at 1194. The court must undertake this second inquiry "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown, 608 F.3d at 734. As such, the dispositive question for qualified immunity purposes as to Cohen's false arrest claim is whether there is a genuine dispute as to whether McGuire had at least arguable probable cause to believe Cohen committed the crimes alleged in McGuire's Complaint and Affidavit.[12] Id.

---

[11] In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court modified the procedure mandated in Saucier, giving trial judges discretion to determine which prong of the qualified-immunity analysis should be resolved first. See Pearson, 555 U.S. at 236.

[12] In wrongful-arrest cases, the "clearly established" prong of qualified immunity is framed as an "arguable probable cause" inquiry. See Poulakis v. Rogers, 341 F. App'x 523, 526 (11th Cir. 2009); Case v. Eslinger, 555 F.3d 1317, 1327–28 (11th Cir. 2009) ("Absent evidence that a constitutional violation occurred, we need not consider whether the alleged violation was clearly established; that is, we need not consider whether [the officer] lacked even arguable probable cause."); see also Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001) (per curiam). In other words, "when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had 'arguable probable cause' to make the arrest." Id. The Eleventh Circuit explains that

> [a]n examination of arguable probable cause makes sense under the second prong because the second prong does not ask whether the Constitution was violated. Instead, it asks only whether a reasonable officer was given fair and sufficient notice that what he was doing was unlawful under the circumstances. Simply put, the only question we ask under [the] second prong is whether "[a] reasonable officer[ ] in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest."

"Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest.'" Lee, 284 F.3d at 1195 (quotation omitted); see also Brown, 608 F.3d at 734. "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007).

Ordinarily, the existence of an arrest warrant breaks "the chain of causation for the detention from the alleged false arrest." Smith v. Sheriff, Clay Cnty., Fla., 506 F. App'x 894, 898 (11th Cir. 2013). However, "the existence of a warrant will not shield an officer from liability where the warrant was secured based upon an affidavit that contained misstatements made either intentionally or with reckless disregard for the truth." Id. "A corollary of the above-stated rule is that a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." Id. (internal quotation marks and emphasis omitted). As such, the law is clearly established "that the Constitution prohibits an officer from making

---

Poulakis, 341 F. App'x at 527 n.2 (quoting Lee, 284 F.3d at 1195); see also Moran v. Cameron, 362 F. App'x 88, 93 (11th Cir. 2010) (addressing the second prong of the Saucier test by asking whether the officer's arrest of the plaintiff "was clearly established as unconstitutional because it lacked arguable probable cause"); Eloy v. Guillot, 289 F. App'x 339, 343 n.5 (11th Cir. 2008) ("The arguable probable cause standard applies in the 'clearly established law' prong of the qualified immunity analysis."); but see Poulakis, 341 F. App'x at 534-35 (Quist, J., dissenting) (citing Skop v. City of Atlanta, Ga., 485 F.3d 1130 (11th Cir. 2007)); Hawthorne v. Sheriff of Broward Cnty., 212 F. App'x 943, 946–47 (11th Cir. 2007) (holding that because the officer had arguable probable cause for the arrest, the plaintiff failed to show a constitutional violation and the court need not consider the "clearly established" prong of the qualified immunity analysis); Davis v. Williams, 451 F.3d 759, 764 n.8 (11th Cir. 2006) (characterizing the "arguable probable cause" inquiry as addressing the first step of the qualified immunity analysis because "there is no question that the second step-clearly established-is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment").

perjurious or recklessly false statements [or omissions] in support of a warrant." See Kelly v. Curtis, 21 F.3d 1544, 1553–54 (11th Cir. 1994).

Here, a genuine dispute exists as to whether even arguable probable cause existed for Cohen's arrest. As discussed, Cohen has testified that McGuire knew Cohen had permission to engage in the charged conduct. No reasonable officer with that knowledge would have concluded probable cause existed to believe that Cohen had the specific intent necessary to commit the charged offenses. Thus, McGuire is not entitled to qualified immunity or summary judgment as to the merits of the claim in Count VII. However, for the reasons previously discussed, there is insufficient evidence that Williams was involved in Cohen's arrest, so he is entitled to both qualified immunity (based on the lack of evidence of a constitutional violation by him) and summary judgment in his favor as to Count VII. Likewise, to the extent Cohen alleges that McGuire and Williams were involved in a conspiracy to falsely arrest him, McGuire and Williams are entitled to summary judgment in their favor.

## 2.    Municipal Liability

Defendants argue that there is insufficient evidence that McGuire had final policy making authority sufficient to hold the City liable based on his decision to file the Complaint and Affidavit. See Motion at 25–26. An isolated decision by a municipal employee can constitute a "policy" if the employee has "final policymaking authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). In the Second Amended Complaint, Cohen alleges, and Defendants have admitted, that "McGuire, as Chief of Police of the Jasper Florida Police Department, and Williams, as City Manager of Jasper, Florida[,] have final policymaking authority as it pertains to the Jasper Florida Police Department

and the City of Jasper, Florida, respectively," and "as 'final policymakers' the actions of McGuire and Williams subject the City of Jasper, Florida[,] to liability for violation of 42 U.S.C. § 1983." See Second Amended Complaint ¶¶ 59–60; Answer ¶¶ 59–60.

Defendants acknowledge those admissions but contend that the admissions are only true in some circumstances and that "there are still limits upon each individual's final policy making authority." Motion at 25–26. To support that contention, Defendants point only to evidence that (1) McGuire did not have final authority to terminate employees and, (2) neither McGuire nor Williams could have been the final decision maker for Cohen's constructive discharge because the City Council "is vested with the authority to hear an appeal and overturn a prior termination decision." Id. at 26. They point to no evidence suggesting that, contrary to their admissions, McGuire did not have final policy making authority with respect to the decision to file the Complaint and Affidavit.[13] As such, they have not demonstrated the absence of a genuine dispute as to whether McGuire had final policy making authority with respect to that action, and the City is not entitled to summary judgment in its favor as to Count VI.

### D.   § 1983 – Deprivation of Protected Property Interest without Due Process (Counts VIII and IX)

Cohen also brings claims under § 1983 for deprivation of his protected property interest in his continued employment with JPD without due process. Second Amended Complaint ¶¶ 71–96. Defendants argue they are entitled to summary judgment in their

---

[13] Moreover, it is unclear whether Defendants' efforts to qualify their prior admissions would be effective. "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1177–78 (11th Cir. 2009). Nevertheless, because Defendants offer no evidence controverting their general admissions in the specific context of McGuire's decision to file the Complaint and Affidavit, the Court need not decide whether their efforts to narrow their admissions are appropriate.

favor as to those claims because Cohen was an at-will employee and as such did not have a property interest in his employment; even if Cohen was not an at-will employee, he was not constructively discharged; McGuire and Williams are otherwise entitled to qualified immunity because Cohen has not identified a clearly established right; and Cohen has failed to identify sufficient evidence that McGuire and Williams had final policy making authority for the City in this specific context such that the City would be liable for their actions. Motion at 15–20, 23–26.

To establish a violation of procedural due process in this context, a plaintiff must show that he had a protected property interest in his employment. Epps v. Watson, 492 F.3d 1240, 1446 (11th Cir. 2007). "State law determines whether a public employee has a property interest in his or her job." Id. (internal quotation marks omitted). "The established rule in Florida relating to employment termination is that where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time[,] and no action may be maintained for breach of the employment contract." Smith v. Piezo Tech. & Prof'l Adm'rs, 427 So. 2d 182, 184 (Fla. 1983) (internal quotation marks and alterations omitted). As such, "[u]nder Florida law, unless an employment agreement indicates to the contrary, employees are deemed to have an at-will status." Susanno v. Lee Cnty. Bd. of Cnty. Comm'rs, 852 F. Supp. 980, 985 (M.D. Fla. 1994).

Defendants argue that Cohen was an at-will employee. Motion at 16. Cohen acknowledges the general presumption of at-will employment in Florida but argues that a policy manual can "elevate a plaintiff's status to one above that of an at-will employee." Response at 15. He points to evidence that "an employee of the City of Jasper can only

be terminated with cause or when the employee's work habits, attitude, production or personal conduct falls below acceptable standards." Id. (citing Williams Depo. Pt. 1 at 86–87; Doc. 80-1 (complete version of exhibit 1 to Williams deposition) at 51).

Under Florida law, "policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." Quaker Oats Co. v. Jewell, 818 So. 2d 574, 576–77 (Fla. 5th DCA 2002). Thus, an employer's "unilateral act of implementing an internal policy that was subject to unilateral amendment or cancellation cannot constitute a contract." Carlucci v. Demings, 31 So. 3d 245, 247 (Fla. 5th DCA 2010).

Here, although the City's personnel manual established policies for disciplinary actions against City employees, the manual does not evince any mutual agreement that it would constitute a separate employment contract. Indeed, it expressly disclaimed any such effect. See Williams Depo. Pt. 2 at 101 ("These provisions do not intend to, nor do they create a contract for employment."). Moreover, the City Council expressly "reserve[d] the right to amend, alter, modify, delete[,] and add to [the] policies and procedures as it deems appropriate to serve the best interest of the residents, employees, and citizens of Jasper, Florida." Id. And employees were not entitled to advance notice of amendments to the manual; instead, the manual provided that amendments must "be made available to all employees and the City Council within thirty working days from the date of approval." Id. at 101. Because Cohen points to no evidence that the personnel manual created any contract rights enforceable under Florida law, it did not "elevate [Cohen's] status to one above that of an at-will employee." Nor could Williams's testimony have that effect in light

of the express language of the manual itself. As such, there is no genuine dispute as to whether Cohen was an at-will employee.

The cases Cohen cites are unavailing. As discussed, the court in <u>Susanno</u> acknowledged that manuals can elevate an employee above at-will status, but that court ultimately concluded that the plaintiff had failed to present sufficient evidence to create a genuine dispute as to whether her employment was something other than at-will. <u>Susanno</u>, 852 F. Supp. at 985. Significantly, the court noted that the manual (1) "did not contain language indicating … that employees such as Plaintiff were not merely at-will employees or could only be terminated for cause" and (2) "stated … that Defendants could add, modify, alter, or discontinue without notice any policies included herein, whichever serves the best interest of Lee County." <u>Id.</u> (internal quotation marks omitted).[14]

Cohen also cites <u>Adams v. Sewell</u>, 946 F.2d 757 (11th Cir. 1991), <u>overruled on other grounds by</u> <u>McKinney v. Pate</u>, 20 F.3d 1550 (11th Cir. 1994). The court in <u>Adams</u> summarily concluded that a policy manual "create[d] a property interest in continued employment for County employees" on the basis that employees could "be discharged only for violation of rules, unsatisfactory performance or conduct." <u>Id.</u> at 764. The court did not discuss Florida law concerning the effect of a policy manual on the presumption of at-will employment, and there is no indication that the manual at issue in <u>Adams</u> contained language similar to the language in the personnel manual at issue in this case as discussed above. As such, <u>Adams</u> provides no support for the proposition that

---

[14] The court's other considerations—specifically, that "Plaintiff was never given an employment contract related to the duration or level of her employment" and that the manual "explicitly stated that employees such as Plaintiff were at-will employees," <u>see</u> <u>Susanno</u>, 852 F. Supp. at 985—although providing an even clearer basis for that court's decision, do not affect this Court's conclusion that, under controlling Florida law, the City's personnel manual was insufficient to establish that Cohen had a protected property interest in his employment.

unilaterally provided policy guidelines expressly disclaiming any intent to create a separate contractual agreement can elevate an employee above at-will status.

Because Cohen has failed to identify evidence creating a genuine dispute as to whether he had a protected property interest in continued employment with the City, Defendants are entitled to summary judgment in their favor as to Counts VIII and IX. In light of the Court's conclusion, the Court need not consider the parties' other arguments as to those claims.

### E.       § 1983 – Violation of Protected Liberty Interest without Due Process (Counts X and XI)

Last, Cohen brings claims under § 1983 against McGuire, Williams, and the City for deprivation of liberty without due process based on allegedly stigmatizing statements by McGuire which were associated with Cohen's constructive discharge from his employment as a police officer. Second Amended Complaint ¶¶ 97–113. Defendants argue that Cohen's claims fail because he voluntarily resigned; the statement by McGuire on which Cohen relies was not sufficiently stigmatizing; there is no evidence that Williams was involved in the events underlying the claim; McGuire and Williams are entitled to qualified immunity because Cohen's right in this context was not clearly established; and there is insufficient evidence that McGuire and Williams had final policy making authority in this context such that the City would be liable for their actions. Motion at 20–21, 25–26.

A plaintiff seeking to recover on a claim based on deprivation of a liberty interest without due process in this context must show that "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) was made

public (5) by the governmental employer (6) without a meaningful opportunity for a name clearing." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001).

### 1.   Voluntary Resignation

Defendants assert that an employee who has voluntarily resigned his employment cannot establish deprivation of a protected liberty interest because due process is not implicated. See Motion at 20 (citing Rademakers v. Scott, 350 F. App'x 408, 411 (11th Cir. 2009)). They assert that Cohen's resignation was voluntary because he was not forced to resign by coercion or duress, and his resignation was not based on deception or a material misrepresentation. See id. at 16–20. Cohen responds that he was constructively discharged both because he was coerced to resign and because his resignation was obtained through a material misrepresentation. Response at 15–19.

The Eleventh Circuit has identified several nonexclusive factors courts should consider in evaluating whether an employee resigned under coercion or duress:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995). Notably, a resignation may be voluntary "even where the only alternative to resignation is facing possible termination for cause or criminal charges." Id.

Defendants note, and Cohen does not dispute, that Cohen was given an alternative to resignation and understood the nature of the choice he faced. See Motion at 17; Response at 16. However, a genuine dispute exists as to whether Cohen had a reasonable time to decide whether to resign or was permitted to consult a lawyer.

-32-

Defendants assert that Cohen had the entire day to decide whether to resign, and McGuire could not have unilaterally fired him immediately anyway. Motion at 18 (citing Cohen Depo. at 114–15, 118, 120–22; Williams Depo. at 15). They also assert that Cohen knew the night before that he had been relieved of duty, and he could have contacted a lawyer then. Id. (citing Cohen Depo. at 108). However, Cohen notes that he was not advised of his alternatives until the morning of November 15, 2013, and McGuire told him he had to decide that day, even though he requested more time. Response at 16 (citing Cohen Depo. at 115–16, 118). Cohen also testified that McGuire did not allow him to seek legal advice because he had already signed a resignation letter shortly before indicating that he wanted to talk to a lawyer. Id. (citing Cohen Depo. at 119–20). In light of that evidence, the Court cannot conclude as a matter of law that Cohen had sufficient time to decide whether to resign or that he was permitted to seek the advice of counsel before making his decision.

Moreover, Defendants admitted in their Answer that Cohen was not permitted to choose the effective date of his resignation. See Second Amended Complaint ¶ 79; Answer ¶ 79. Defendants point to contrary evidence suggesting that Cohen was permitted to negotiate the effective date of his resignation. See Motion at 18. However, "facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1177–78 (11th Cir. 2009). Thus, Defendants' attempts to identify evidence to controvert their unequivocal admission of that fact are unavailing. Although Defendants requested leave to amend their Answer to correct that admission, see Doc.

55 at 1–2, the Court denied that motion, see Doc. 69 at 9, so Defendants' admission stands.

Because several factors remain in dispute, the Court cannot conclude as a matter of law that Cohen was not forced to resign under coercion or duress. Therefore, the Court cannot find that Cohen's resignation was voluntary at this stage of the proceedings.[15]

### 2.    Stigmatizing Statement

Defendants also argue that McGuire's statement to the press that Cohen had resigned from his employment as a police officer on November 15, 2013, "is insufficient to meet the 'stigma-plus' standard." Motion at 20–21. However, Defendants focus on the wrong statement. In his Response, Cohen indicates that the false statement on which he bases his claims is "McGuire's arrest affidavit." See Response at 19. Indeed, Cohen's liberty interest claims have always been based on the allegedly stigmatizing effect of McGuire's statements in the Complaint and Affidavit asserting that Cohen had committed 20 felonies. See Second Amended Complaint ¶ 101 ("At all times the criminal charges reported and described by the media were false and of stigmatizing nature."). Cohen relies on McGuire's statement to the press about Cohen's resignation to establish that McGuire implicitly connected the charges in the Complaint and Affidavit to Cohen's separation from employment. See Response at 19–20; Second Amended Complaint ¶¶ 99–103. He does not contend, however, that McGuire's statement about Cohen's resignation by itself was sufficiently stigmatizing. Because Defendants fail to develop any

---

[15] Although not requiring an in-depth discussion, it appears that a genuine dispute also exists as to whether Cohen resigned based on a material misrepresentation. Cohen testified that McGuire had promised that if Cohen resigned, McGuire would not seek criminal charges. Cohen Depo. at 125. Cohen also testified that McGuire told him he would lose his retirement benefits if he were charged and found guilty, and that potential consequence factored into Cohen's decision to resign. Id. at 115, 118, 122, 125.

-34-

argument concerning the allegedly stigmatizing statement on which Cohen actually relies, they have failed to establish that summary judgment in their favor is warranted on that basis.

### 3.    Williams's Involvement

Defendants argue that there is no evidence that Williams was involved in any defamatory statements about Cohen. Motion at 24–25. As with the other claims against Williams, the Court finds Cohen has failed to point to evidence creating a genuine dispute as to Williams's involvement in the conduct underpinning Cohen's liberty interest claim. The only evidence Cohen identifies is his testimony suggesting that Williams was the driving force behind the decision to force Cohen out of his job and that Williams agreed to allow the City to be the victim for the purposes of the criminal complaint. Just as that evidence was insufficient to create a genuine dispute as to whether Williams caused Cohen's prosecution, it is also insufficient to create a genuine dispute as to whether Williams was involved in McGuire's decision to publish the allegedly stigmatizing statement (the Complaint and Affidavit) or McGuire's decision to comment on Cohen's departure to the press. That Williams might have wanted Cohen removed from his position is insufficient to create a genuine dispute as to whether Williams had any role in the alleged violation of Cohen's liberty interest. As such, Williams is entitled to summary judgment in his favor as to Count X.

### 4.    Qualified Immunity

Defendants argue that McGuire is entitled to qualified immunity because the right Cohen alleges was violated was not clearly established. See Motion at 24. As previously discussed, for qualified immunity purposes, if the court finds that a violation of a

constitutional right has been alleged based on the plaintiff's version of the facts, it must then determine whether the right was clearly established at the time of the violation. Saucier, 533 U.S. at 201. The court must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." Id.

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right …; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right …; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009). A plaintiff "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to demonstrate that case law clearly establishes his right. Keating v. City of Miami, 598 F.3d 753, 766 (11th Cir. 2010) (internal quotation omitted).

Defendants provide no argument on the issue of whether the right at issue in the context of this claim was clearly established. Instead, they broadly assert that, "[u]nder the facts of the instant case, Cohen's rights were not so clearly established as to place McGuire … on notice that [his] behavior was unlawful." Motion at 24. As such, it is unclear whether Defendants' assertion of qualified immunity is based on their mistaken belief that Cohen's liberty interest claim is based solely on McGuire's statement to the press that Cohen had resigned. See supra at 33–34. Nevertheless, at the time of McGuire's actions, the law was clearly established that "dismissal of a government employee accompanied by a charge against him that might seriously damage his standing and associations in his community would … trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name." See Owen v. City of Independence, Mo., 445 U.S. 622, 633 n.13 (1980). More specifically, the law was clearly established

that public accusations of misappropriation of police department property, theft, and alcoholism are sufficiently stigmatizing for purposes of a Fourteenth Amendment liberty interest claim. See id. at 627–28, 633 n.13 (misappropriation and theft); Dennis v. S&S Consol. Rural High Sch. Dist., 577 F.2d 338, 341 (5th Cir. 1978) (statement that employee had "a drinking problem"); see also Marrero v. City of Hialeah, 625 F.2d 499, 519 n.25 (5th Cir. 1980) ("[A] statement that 'X has received stolen property' would be defamatory if in fact the property X received was not stolen."). The law was also clearly established that a stigmatizing statement can be sufficiently connected to an employee's discharge if the public would perceive such a connection given the context of the statements. See Marrero, 625 F.2d at 519. And the law was clearly established that a statement placed in the public record as required by law is sufficiently public for purposes of a liberty interest claim. See Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1045–46 (11th Cir. 1989). Those cases, taken together, clearly establish that a public official violates the Fourteenth Amendment by (1) falsely accusing an employee of criminal wrongdoing in a public record; (2) making subsequent statements about the employee's discharge from employment that would cause the public to perceive that the discharge was connected to the alleged crimes; and (3) failing to give the employee a sufficient opportunity to clear his name. Thus, viewing the facts in Cohen's favor, McGuire is not entitled to qualified immunity.

### 5.    Municipal Liability

As with Cohen's other § 1983 claims, Defendants argue that there is insufficient evidence that McGuire and Williams had final policy making authority such that the City would be liable for their conduct in this context. Motion at 25–26. However, as previously

discussed, Defendants admitted that McGuire was a final policy maker for the City. <u>See</u> Second Amended Complaint ¶ 109–10; Answer ¶¶ 109–10. Even if they could refute that admission here, Defendants point to no evidence suggesting that, contrary to their admissions, McGuire did not have final policy making authority with respect to the decision to file the Complaint and Affidavit or the decision to speak to the press. As such, the City is not entitled to summary judgment in its favor as to Count XI.

## V.    Conclusion

In light of the foregoing, Defendants' Motion is due to be granted in part and denied in part. Accordingly, it is hereby

**ORDERED:**

1.     Defendant's Motion for Summary Judgment (A Dispositive Motion) and Supporting Memorandum of Law (Doc. 33) is **GRANTED, in part, and DENIED, in part.** The Motion is **GRANTED** to the extent that:

   a.    Judgment will be entered in favor of McGuire and Williams as to Counts III (conspiracy to falsely arrest), V (conspiracy to maliciously prosecute), and VIII (deprivation of protected property interest without due process);

   b.    Judgment will be entered in favor of Williams as to Counts II (false arrest), IV (malicious prosecution), VII (§ 1983 false arrest), and X (violation of liberty interest without due process); and

   c.    Judgment will be entered in favor of the City of Jasper, Florida, as to Count IX (deprivation of protected property interest without due process).

The Motion is otherwise **DENIED.** Cohen's claims against the City in Counts I (false arrest), VI (§ 1983 false arrest), and XI (violation of liberty interest without due process), and against McGuire in Counts II (false arrest), IV (malicious prosecution), VII (§ 1983 false arrest), and X (violation of liberty interest without due process) remain in the case.

2.      The Court will defer entry of judgment in favor of Defendants as described above pending resolution of all remaining claims.

**DONE AND ORDERED** in Jacksonville, Florida, on June 8, 2016.

MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record